Good morning, Your Honors. May it please the Court, Deputy Federal Public Defender Tracy Casadillo for Petitioner Appellant Francis Hernandez. I'd like to reserve ten minutes for rebuttal, if I may. The credibility findings and fact findings of the District Court below support the conclusion that because the jury that found Francis Hernandez guilty of first-degree murder heard none of the substantial evidence of his mental impairments and severe brain damage, we cannot have confidence in the verdict. A jury should be given the opportunity to decide for itself whether Hernandez committed first-degree or second-degree murder, and that's really the only question before this Court, is whether it was first-degree or second-degree, and whether a jury reasonably could have determined second-degree. Counsel, let me ask you this. This obviously is a very troubling case. Let's just, for purposes of our discussion, let's concede that there was a violation of the first prong of Strickland. But what is your best argument that the second prong is satisfied? In other words, that prejudice has been shown. You have an extensive amount of physical evidence that was found in his vehicle, on his person. You also have this very extensive, it's not a deposition, it's a confession, in which he laid out in great deal a number of things, including what he was thinking. Given all of that, how is the second prong satisfied? Two things, Your Honor. First of all, it was always the prosecution's burden to prove beyond a reasonable doubt that Francis Hernandez had the requisite intents for first-degree murder. If Mr. Hernandez had been able to present the evidence that's before the Court here, the prosecution then would have had the burden to negate that evidence or to disprove it. Counsel, would you clarify something on that point for me, please? My question is, this was a felony murder conviction, correct? Correct. There was two theories, but one of them was felony murder. And so, was the burden on the prosecution to prove specific intent to murder or to prove specific intent to rape? They were alternate theories, but it was the prosecution's burden to prove beyond a reasonable doubt either intent. Okay. Either intent would suffice to sustain the conviction? Correct. Counsel, with respect, I don't think you answered my question. What I asked was, given the physical evidence and given what was said in the confession, and specifically his comments about his intentions, how do you satisfy the second prong of Strickland? I know you've got all these other things that the psychologist and the psychiatrist and other people said. I get that. But I want to know, putting that aside for a moment, how is a jury going to get past the prejudice issue here? Well, let me refer Your Honor to the case of the California Supreme Court dealing with the issue of diminished capacity. In People v. Gidecki, there was a the diminished capacity evidence included that the defendant was dissociating at the time of the crime. The California Supreme Court did not conclude that the confession was so detailed that the diminished capacity defense could not prevail. And in fact, it found that the diminished capacity defense should have prevailed, despite the detailed confession, and it reduced the charge to second-degree murder. Okay, but again, help me here. I know there's a dissociation claim, and I know a little bit about that. I'm certainly no expert. But that doesn't, I don't think, change the fact that even if he was in that state, that as he recalled what he did on these two separate instances, the steps that he took, for example, carving the tic-tac-toe on the stomach of the second victim and so on, there was intention to that. He wanted to try to make it look so it wasn't the same person who did the first murder. I don't know what that has to do with dissociation in this case. What am I missing? Well, Your Honor, there are several conditions that Mr. Hernandez was suffering from. In particular, he had bipolar disorder and was actively dissociating. He also had extensive brain damage, and one of the experts actually said that this was one of the most extreme cases of brain damage he had seen in a long time. Let's say that's all true. Let's say that's all true. I still don't see how that affects what he said he was thinking when he did certain acts in connection with the two different murders. Well, the question that you're asking seems to be more relevant to a diminished actuality defense in which the defendant has to disprove the evidence of intent. With a diminished capacity defense, once the defendant establishes the mental illness or incapacity, that showing negates the evidence of intent. And you can see that operating in the decisions of the California Supreme Court when it decides sufficiency. Point me to your best case in the California Supreme Court on that point. People v. Gadecki, Your Honor, would be our best case, but also people v. Bassett is also a good case. And in both those cases, let me start with Gadecki. In Gadecki, the defendant described hitting his father with a tire iron, watching him dying fast enough. He therefore said he got a hunting knife to finish him off. Now, these are clear statements of intent. And yet the California Supreme Court found that because Mr. Gadecki's capacity to formulate intent was diminished by his dissociation and other problems, they reduced the And isn't this a question that goes to the jury? It is a question that goes to the jury, Your Honor. Of course, in the days of diminished capacity, the experts were allowed to testify to the ultimate fact, to the ultimate issue. And Mr. Hernandez's jury would have been able to hear that testimony. I think that the important factor is, on this record, can we say that the prosecution would have rebutted Mr. Hernandez's showing of mental illness? Is that the test? Yes, Your Honor, because if there was a showing of mental illness, it would have negated the evidence of intent. Well, a jury could find that, but it doesn't mean it actually, the jury would necessarily find that. Certainly, Your Honor. And in Wehry v. Smith, the United States Supreme Court found prejudice in a case where they concluded that the jury could have found that the new evidence wasn't meaningful. And yet, on this record, they could not have confidence in the verdict. And I think this is a very similar situation. What we have is unrebutted expert testimony stating that Mr. Hernandez did not have the capacity to form any of the requisite intents, whether it be intent to kill or intent to rape. The jury would have had to discredit that testimony in order to find first-degree murder. Do we have any, I mean, obviously this evidence didn't come in at the trial. Correct, Your Honor. Right, so how do we know it would have been unrebutted? Well, Your Honor, what we have is the record before us. And when we look at this record, we know that the best the State could do was produce an expert who lacked credibility. There was no credible expert that they provided to rebut this showing. Furthermore, these experts were all deposed. They were all cross-examined. None of them backed down from their opinion that Mr. Hernandez was not capable of forming the requisite intents. Now, I will point you to a couple of cases that the California Supreme Court found diminished capacity was not satisfied. And that would be People v. Reisenhoover at 70 Cal 2nd, 39. People v. Cantrell at 8 Cal 3rd, 672. And People v. Cruz at 26 Cal 3rd, 233. Now, these are the three cases that I found involving mental health evidence in which the California Supreme Court found that the evidence of diminished capacity was not sufficient. And in each of these cases, the reason they found it wasn't sufficient was because it had been rebutted by expert testimony on the other side or that the defendant's experts themselves had backed down from their opinion. So are you saying, counsel, then, that the fact that, as my co-colleague said, the fact that it wasn't rebutted, that somehow that trumps, if you will, the fact that they might have come up with something else. They might have had experts of their own. And that as a result, it kind of takes it away from what the judges are going to decide. Do we have to rely upon the fact that since the experts said what they said, that it's basically out of the jury's province? Is that what you're saying? Well, Your Honor, this Court has said something very similar in Wheaton v. Johnson. There, this Court said that we may not invent arguments the prosecution could have made when the evidence is uncontradicted on the record before us. And that's what we have here. Is your best expert, Dr. Clausen, the one who rendered the opinion that he was in a disassociative state when these crimes were committed? She's certainly one of the main experts, but I don't think that you can evaluate Mr. Hernandez's condition without also looking to the testimony of Dr. Otnell Lewis and Dr. Gurr. With regard to the expert opinion regarding Mr. Hernandez being trauma-induced and having all of these mental illness, did any expert provide an explanation as to the detailed nature of his confession? In other words, did the experts explain away the detailed nature of his confession? Because I think what's difficult for your case, in this particular case, is there were alternative theories presented. And under the felony murder theory, the government's proof of a specific intent to rape alone would have justified the first-degree murder conviction. And as to the intent to rape, the best evidence came from Mr. Hernandez himself. So during the course of examining him, did any of the defense experts directly counter that? I know there was a suggestion by one of the experts that, well, perhaps he was coerced or it was not a voluntary confession to try to explain away that. But that I didn't see the experts directly grappling with it. I believe they did grapple with it, Your Honor. They looked, they considered the confession. They certainly had the confession. And what they saw in that confession was that Mr. Hernandez was actually piecing together memory. And it wasn't necessarily, it was a reconstructed memory, after five hours of interrogation, in which Mr. Hernandez had been shown photos of the bodies, which is something that's admitted at the very beginning of the interview. And so, and he had also seen news reports on television, and he had read newspaper articles. So when you put all that together, Mr. Hernandez had sources of information that were not necessarily his memory. But again, setting aside dissociation, it's not the only reason to find Mr. Hernandez lacked capacity. Mr. Hernandez had serious brain damage from the time of birth, stemming from prenatal injury, exposure to alcohol and drugs, birth injury from the use of forceps, and repeated head injuries resulting in serious trauma. So there was an effect from that brain damage on Mr. Hernandez's ability to process information. It slowed his processes. It slowed his decision making. And on top of that, he was hypomanic. And the district court granted the petition for habeas corpus on the sentencing phase for that reason, right? Correct, Your Honor. And as I understand it, the state did not appeal that? That's correct, Your Honor. Okay. So is Mr. Hernandez no longer on death row? He remains on death row at this time. And that is because? I believe pending the decision about what's going to ultimately happen in this case. Okay. Because if we reverse the conviction, then it would have to be a retrial? Correct, Your Honor. Okay. But in response to Judge Wynn's question about the felony murder aspect of it, do you agree that if we find a specific intent to rape based upon the evidence that we have, that that would be sufficient to sustain a murder conviction in this case? Specific intent to rape would be sufficient to sustain the first degree murder conviction, but I also would contend that you would have to find that Mr. Hernandez was not suffering from brain damage, bipolar disorder, or dissociation at the time of the crimes in order to reach that finding. And again, that's because the diminished capacity defense negates the evidence of specific intent. Well, it can. It can. It can. But that doesn't necessarily, right? It can if it's deemed credible. And what this Court has before it is unrebutted, credible evidence, which the District Court found credible and relied upon in granting penalty relief. How do you account for the similarities between the two crimes within a five-day period? Was there any explanation as to how somebody who has the incapacity to form the mental state that the experts opined to could commit two similar crimes within such a short period of time? There's two answers to that, Your Honor. First of all, the hypomanic stage often lasts up to five days, so he could have been in the same hypomanic state on the first crime that he was in in the second crime. The second and more important answer, I believe, is that it's really clear from Mr. Hernandez's background that he is reenacting abuse that he suffered at the hands of his adopted mother as a child. And that abuse, and also his adopted father, that abuse includes being burbed with cigarettes, being tied up, being sat on, being sodomized. So the exact kinds of behaviors we're seeing in these crimes, which are awful, are also behaviors that Mr. Hernandez himself suffered. So that's the explanation, Your Honor. I want to be sure I understand your position, because I don't read the California Supreme Court cases the way you do on this point. But I want to be sure I understand. Do I understand you to say that the California Supreme Court has said that unrebutted evidence of the kind of mental illness that you've described Mr. Hernandez as having is alone, sufficient, on its face, to rebut any expressed intention, in this case, to rape or murder or anything else. Is that correct? Yes, Your Honor. And I would, the thing that I want to emphasize is the difference, what you're speaking of, that the evidence wouldn't have negated, that the evidence, you could look at both evidences equally. That's diminished actuality. That's the change in the law that occurred in 1982. Mr. Hernandez was entitled to a diminished capacity defense. He's entitled to the full defense. That defense negates evidence of intent. Do you want to save time for me? I would like to save the remainder for a rebuttal. Thank you, Your Honor. Thank you very much, counsel. Good morning, Your Honors. May it please the Court. Deputy Attorney General Gary Lieberman for respondent. I'd just like to make a few comments in response to Mr. Hernandez's counsel's argument and then go into my presentation if I could. First of all, Mr. Hernandez being shown photos of the victim's bodies that's incorrect. Well, the fact is, is that Mr. Hernandez described the markings on the bodies before being shown photographs of the victim's bodies. And that's, Mr. Hernandez confirms that in his recorded confession. Mr. Hernandez was shown mug shot photos, photos of the faces to identify the victim. But he wasn't shown photographs of the victim's bodies until after he had described to the police the markings that he made on those bodies. So this isn't something that was suggested to him by showing him the photos. And I would just, I would point out. What does that go to? Does that go to the specific intent? That goes to the detailed confession, Your Honor. The way given to the detailed confession by the jury. Excuse me, Your Honor. You're saying the weight that the jury. So to me, this whole case turns on prejudice. Completely rises or falls with the decision about prejudice. So, and the prior majority opinion rested heavily on the point, which I heard from Judge Reinhart many times, that at least one juror, one reasonable juror's mind on the determination of specific intent would have been altered had this evidence supporting a diminished capacity defense been admitted. So that's really the question that's weighing on me. Like how, so do you agree with that? That that's where this case turns? Your Honor, I also submit that the defense has not shown deficient performance and I'm happy to address that as well. But the opinions of Mr. Hernandez's post-conviction experts cannot reasonably overcome the objective evidence that shows Mr. Hernandez had the capacity to form the intent and did in fact form the intent to rape and kill on the nights in question. First, let's, I take your point that you don't think that's what they did. Opposing counsel takes the position that collectively those experts filled out all the blanks to show a diminished capacity. And that under then-California law that was sufficient to effectively, I gather, rebut any intention evidence that came from the confession or the physical evidence. What's your response to that? My response, Your Honor, is that it would not have, it would not reasonably have rebutted the substantial evidence showing that Mr. Hernandez had the capacity to form the requisite intents. The first of which being, as Your Honor has mentioned, the detailed confession. And by I mentioned the photographs was appellant is trying to undermine his detailed confession by suggesting that Mr. Hernandez was fed information prior to giving his confession. So this wasn't really his actual recollection. This was information that was given to him. And so I pointed out the photographs because he wasn't shown photographs. Maybe you started out a little too in the weeds for me. I'm so sorry, Your Honor. I'm sort of looking at this big analysis that we're supposed to be following. Then, okay, yes I will, Your Honor. There are four key factors why Mr. Hernandez cannot show that he was prejudiced by trial counsel's failure to present a diminished capacity defense based on mental illness. Number one, the detailed confession. Number two, Mr. Hernandez's pre-offense statements about wanting to have violent sex with Kathy Ryan. Number three, the striking similarities between the crimes. And number four, Mr. Hernandez's attempt to prevent the police from linking the two crimes together. Now, the opinions of Mr. Hernandez's post-conviction experts that he suffered from bipolar mood disorder, dissociation, impaired reality testing, and brain damage cannot reasonably overcome the overwhelming objective evidence that Mr. Hernandez had the capacity to form and did form the requisite intents on the night in question.  But the evidence demonstrates that he wasn't so substantially impaired that he couldn't form the requisite intents. He could have been suffering from bipolar mood disorder and having wide mood swings. That doesn't mean he can't form the intent to rape or kill. Dissociation, while I would say dissociation, is inconsistent with Mr. Hernandez's keen awareness of his actions and attempt to prevent the police from linking the two crimes together which is demonstrated by his detailed confession and also his admission that after he killed Kathy Ryan he took a piece of glass and etched a tic-tac-toe pattern in her stomach to make her body look different than Bristol's. So I think dissociation is inconsistent with the evidence here. Impaired reality testing, Mr. Hernandez's conduct goes well beyond a failure to correctly perceive social cues. Mr. Hernandez, excuse me. While you're looking for that counsel, I would be interested in your response to this question. What is the best evidence the state has that Hernandez intended to rape both these women that you think would get past any diminished capacity defense? The best evidence of intent to rape, I think, well, twofold, Your Honor. Well, first, I guess I think the best evidence, I think, would be the catastrophic nature of the pre-mortem vaginal and anal injuries themselves. This could never have been intended as consensual acts from the beginning given the extreme nature of the victim's vaginal and anal injuries. Also, Mr. Hernandez expresses his intents in his detailed confession. Mr. Hernandez remembered feeling mad and frustrated on the night of the Bristol killing. He stated, quote, That's why I went looking for that queer to beat up on that night. It wasn't just him. It was just anyone looking for someone to get in a fight with or something like that. In other words, Mr. Hernandez was looking for someone to hurt that night. But doesn't that go back to what the opposing counsel suggested in terms of his childhood, you know, the brutalization he suffered, the sodomy, the beatings, the cruelty, etc., etc.? Does that have anything to do with the disassociative state that she read? I don't believe so, Your Honor. I think that Mr. Hernandez's bad upbringing might explain why he did the things he did, but it doesn't demonstrate that he lacked the intent to do those things. It may explain, okay, yes, he's resentful of his mother and what have you, and therefore he wants to hurt other women. But that shows, maybe explains why, and that's why that may have been persuasive evidence in a penalty phase, but not the guilt phase. It doesn't speak to the fact that he couldn't form the requisite intent to do these things. It just might be an explanation as to why. And going back to impaired reality testing, Mr. Hernandez's binding and sodomizing Edna Bristol goes well beyond not accurately perceiving social cues. His forcibly removing Kathy Ryan from her home, these are well beyond just, oh, he has impaired reality testing, therefore he can't accurately perceive that someone may not want to have sex with him. And, of course, the extreme injuries that both victims suffered premortem to the vaginal and anal areas, that's well beyond misperceiving social cues. So my point was that Mr. Hernandez could have impaired reality testing, he could have brain damage to some degree, but the fact is the evidence is overwhelming that notwithstanding these things, he wasn't so substantially impaired that he couldn't form the requisite intent. And we've talked about the detailed confession. If I can just... Is there a heightened requirement for showing intent in this case? I read something that there was a... that because it was being used as a predicate for felony murder, the rape, that there was a heightened burden of intent on the government. No, Your Honor, it's the same burden of proof beyond a reasonable doubt as in any criminal case. It was either intent to commit rape in which a death occurs, that would have been one path to first-degree murder, or intent to kill with deliberation and premeditation, which would have been another path to first-degree murder that the jury would have had in this case. Both theories were laid out to the jury. They received the instructions on both, and it was argued, both theories were argued? I know they were instructed on both, and yes, I believe both were argued to the jury. One thing I would like to address is the second factor that I mentioned, which was Mr. Hernandez's pre-offense statements about wanting to have violent sex with Kathy Ryan. Now, despite Ryan's earlier rejection of Mr. Hernandez's advances, Mr. Hernandez then tells a friend that, I'd like to make a sandwich out of Ryan, and he says, and I'm paraphrasing here, that he would like to sodomize her until she screams. Mr. Hernandez then predicts that he's going, he predicts to his friend, he says, you watch, I'll get some tonight or tomorrow night. That shows Mr. Hernandez's mindset on the night of the Ryan killing. He is going to have violent sex with Kathy Ryan, whether she wants it or not, and Mr. Hernandez did just that. He formed the intent and later carried it out. Did you make any argument regarding the fact that he actually had the duct tape in the car to tape up both victims? Didn't he tie up both victims with tape? He certainly tied up Edna Bristol with the duct tape, and then there was duct tape around in the area where he, after he, in his van with respect to Kathy Ryan. I don't know that he actually tied and bound Kathy Ryan. It was just one fact, I don't know if you argued it or not, that stood out to me, like if he was, that would go to premeditation, that he had the tape, and he had the bat. Those are good points that... I'm just wondering if you argued them. I didn't, but I would endorse them for sure. Okay. Then, of course, we have the striking similarities between the crimes committed just days apart. Mr. Hernandez committed both murders inside his van. He inflicted, as I indicated, severe lacerations and contusions to the vagina and anus of both victims. I think the words of the deputy medical examiner are very informative. According to the deputy medical examiner, the vaginal and anal wounds were extremely similar and extremely rare. The penetration produced very extensive injury, and in 10 years' experience, it's almost been unique to find it in these two cases. And it certainly suggests a very large object and repetitive injuries to both the vagina as well as to the anus. And indeed, a baseball bat with traces of human blood on it was found in Mr. Hernandez's van. May I ask you another question that relates to Ms. Casadio's argument? She asserts that all this evidence of mental illness was unrebutted, and if that is the case, then California law says that we have to say that it undermines the ability to form this intent. Oh, I can't imagine that being the state of California law. It's rebutted by the physical, by the objective evidence of what occurred. It's two arguments. One is that the law, and two, was it rebutted? No, no, I can confidently say, frankly, I'm not prepared to address these five other cases that Appellant's counsel brought up today. I can't imagine that they're on all fours with this case. I'm happy to present a letter brief to the court addressing those cases if the court would like. I don't know if those cases were even in the briefing because I don't have them either, so I'm just... I don't either. Okay. And so here, had evidence of diminished capacity been presented, number one, it would have been rebutted by the four factors that I mentioned, the detailed confession... But that's your rebuttal. Your position is you don't have to go get an expert to say, no, he didn't have these things. He didn't have these, you know, mental impairments. No, the state did not have to get an expert to do that, but in fact, you know, on habeas corpus, the state did present an expert, yes, and which unfortunately had some baggage, and the district judge found lacked credibility. But certainly the state, you know, had Mr. Hernandez presented, you know, diminished capacity based on mental illness at trial, the state certainly could have put on an expert who would have said, based on all the evidence, no. He didn't... He had the capacity. And we know that just by looking at the four experts that trial counsel consulted before trial. And this goes to the division performance problem as well. Mr. Hernandez's attorneys consulted with four mental health experts prior to trial. That would be Dr. Maloney, Dr. Coburn, Dr. Davis, and Dr. Gersh. There was no issue as to these experts' qualifications. Each expert personally evaluated Mr. Hernandez, reviewed various material. None requested additional information or that Mr. Hernandez be evaluated by a neurologist. And none of these experts' opinions supported a diminished capacity defense. Two of the doctors expressly found that Mr. Hernandez had the capacity to form the requisite mental states. Those would be Dr. Coburn and Dr. Davis. Dr. Maloney's opinion was entirely inconsistent with a diminished capacity defense, saying that Mr. Hernandez did not have any cognitive, significant cognitive or intellectual impairments. And then Dr. Gersh, trial counsel, points out the fact that, well, a diminished capacity defense would have been available. And Dr. Gersh comes back with the opinion that Mr. Hernandez manifests an issue of being a psychopath, a sociopath. And in Mr. Downing, trial counsel's own notes, Mr. Downing states, that is sociopathic stuff, not what I want. So... So is it your position that the experts, that the defense put on, that whatever they said did not support the concept of diminished capacity, and that whatever opposing counsel says about whatever that would have meant is irrelevant here because that was simply not presented? Is that your position? I'm sorry, Your Honor, I'm not following the last part of the Court's question. Okay. I have been hearing you talk about their experts. I thought you said that those experts did not testify that Mr. Hernandez had diminished capacity. Did I misunderstand you? The experts that were consulted by trial counsel prior to trial did not testify in the guilt phase. None of them formed the opinion. None of them. Two of them found that Mr. Hernandez had the capacity. The other two, one found that he was a sociopath. The other opinion was inconsistent. None of those experts testified. None of those defense experts, none of whom would have helped Mr. Hernandez's case, testified at trial. Okay. Were there other experts that did testify that she's talking about, or are you saying that none of the experts that were involved said that Mr. Hernandez suffered from diminished capacity? There was one expert who did testify at trial, not a mental health expert. This was the gastroenterologist, Dr. Reyes, and this was regarding the disease of alcoholism. And, in fact, the jury had information from Dr. Reyes about impaired reality testing. Dr. Reyes testified that an inebriated alcoholic might view somebody that he feels sexual towards as having the same feelings back. And although Dr. Reyes's testimony was somewhat equivocal on the point, he did testify that, in his opinion, that an inebriated alcoholic could not form the intent to kill. But that's a different issue than whether or not he had diminished capacity, right? In the technical sense. That was the evidence that was presented in support of a diminished capacity defense at trial. Oh, that was it? Okay. Trial counsel presented a diminished capacity defense based on intoxication, but not mental illness. Going back, Your Honors, to the similarities between the crimes, Bristol and Ryan both had bite marks on their breasts. Mr. Hernandez struck both of them in the mouth. He killed both victims in the same way, grabbing the throat with one hand and covering the mouth with the other hand, asphyxiating them. He subsequently burned the pubic hair of both victims, and he also left the naked bodies of both victims in a grassy area by a school. And I've already mentioned how Mr. Hernandez had the presence of mind after he killed Kathy Ryan to try to make the body look, to make Kathy Ryan's body look different. That shows a calculating individual. Especially, I think that is, to me, that's the most chilling evidence in the case, was after killing Kathy Ryan, etching a tic-tac-toe pattern in her stomach. That shows a calculating individual. This is not someone who was so substantially impaired that he can't form the basic intents to have sex with somebody against their will or to kill someone. So accordingly, the dissent got it right when it said, even if the jury had considered the omitted evidence of Hernandez's mental condition, there is no reasonable possibility of a different outcome. And also, Your Honor, I do not concede the deficient performance prong. I don't think the deficient performance prong has been met. But didn't the counsel state that he'd never considered mental impairment as something that could sustain a diminished capacity defense? That's what he stated 18 years after the fact. And I think that that is just inherently incredible. First of all, the very phrase, diminished capacity, doesn't indicate that there's any limitation to it. Diminished capacity refers to mental capacity, which obviously includes mental illness. So it's just inherently unbelievable. But everyone else took it as true. I mean, didn't the district court say that he didn't consider? I mean, he found him credible, right? The district court did. I think that that rises to the level of clear error in this case. Yeah, but I think it's really hard to ask us to judge credibility at this point. I mean, the district court had his credibility in front of him. We can't really. That's a very difficult ask. Well, yes and no, Your Honor. The evidentiary hearing was presented solely on paper. The district court did not hear live testimony from Charles Downing. The district court read Mr. Downing's deposition. And that's what I'm basing my argument on as well. So the district court didn't have the benefit of being able to see Charles Downing's demeanor, something that this court would not have the benefit of doing. So you're arguing that it was clear error as a factual matter. What about the legal question of whether we look at that and ask whether that was objectively unreasonable? Yes, Your Honor. I think that the Strickland standard is an objective standard. It asks whether counsel's performance fell below an objective standard of reasonableness. And here a trial counsel, a reasonable trial attorney, certainly could have decided not to put on a diminished capacity defense based on mental illness, given the four experts that were consulted, because it would have been damaging to Mr. Hernandez. Evidence would have come out that Mr. Hernandez was a sociopath. That would have been horrible evidence in the guilt phase. Counsel, forgive me, are you arguing that the first prong of Strickland is not satisfied? That's correct, Your Honor. I also think that the first prong has not been satisfied because a reasonable attorney under the circumstances could have done the exact, would have done. Well, if he did it as a strategy or that was his purpose, he had some idea that I'm not going to do this because. But I thought, if I recall correctly, that he specifically said he had no such strategy in mind and he didn't even know about this idea that he needed to present this evidence. That's what he said. So how did that somehow satisfy or fail to satisfy the first prong of Strickland? Well, as a legal matter, in Harrington v. Richter, the Supreme Court stated that Strickland calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind. So regardless of what counsel, why he did, he didn't present that evidence, it almost reminds me of when an appellate court reviews a trial court's ruling. The appellate court rules, evaluates the trial court's decision, not the trial court's reasoning. So here, regardless of what Mr. Downing's subjective reasoning was, he made the right decision. Clarence Darrow, sitting in defense counsel's chair in this case, with the four expert opinions that were obtained prior to trial, would not have put on a diminished capacity defense based on mental illness. That would have been foolish. Because? Because it would have resulted in evidence that Mr. Hernandez not only had the capacity, but that he was a sociopath. Which is devastating evidence for any jury to hear. That Mr. Hernandez just simply doesn't care about others' emotions. So a reasonable attorney would have done the exact same thing that Charles Downing did. Yes, not for the same reasons, but it would have been the same effect. And my argument is, is that because Strickland is an objective standard, whether counsel's performance falls below an objective standard of reasonableness, here, Mr. Downing's performance did not fall under an objective standard of reasonableness because what he did was the correct call. Maybe he did it for the wrong reason, but it was still a reasonable decision not to put on that evidence. Your Honors, in sum, I submit that this Court should affirm the district court's judgment and uphold Mr. Hernandez's first-degree murder convictions. Thank you, Your Honors. Thank you, counsel. Your Honors, I'll be as brief as I can. The first thing I wanted to address was, Judge Wardlow, your question regarding the duct tape. Mr. Hernandez lived in his van. He had various supplies in his van for his survival. The baseball bat is easily conceived as self-defense. The duct tape is always a useful item, especially when you are dealing with a used car. So that's one explanation. The jury had to find, beyond a reasonable doubt, that Francis Hernandez had the requisite intents. Counsel, let me just ask. None of these defenses were presented to the jury, right? In other words, this is where he lived. It's really normal to have the duct tape, normal to have the baseball bat. None of that came up, did it? You know, I don't know for certain whether that came out at trial, Your Honor. I could look and advise the Court by letter. But it is part of the record before this Court that he lived in the van. Okay. The other thing that I wanted to address was, Judge Wardlow, your question about, is there a higher burden for intent in this case? And I'm not sure you got a clear answer there. In this case, unlike in modern cases, the prosecution had the burden of proof to prove, beyond a reasonable doubt, that Mr. Hernandez had the specific intent to rape, not the general intent. So general intent is what establishes that rape occurred. That's not at issue in this case. The only thing at issue is the specific intent necessary for the first-degree murder charge. What about the evidence that was presented that, I think it was the night of the second murder, that Mr. Hernandez was quoted as specifically stating that he wanted to sodomize and hurt Ms. Ryan. And he said, essentially, you watch, you'll see. And then later on that happened. Why is that not a specific intent meeting requirement there? Why isn't that satisfied? Because, Your Honors, what our experts tell us is those conversations show that Mr. Hernandez was in the throes of hypomania. Which causes a hypersexuality. You're talking about symptoms of his mental illness. So you're saying that, I think you're talking about like the last five days here. So you're saying that no matter what he said, no matter what he did, no matter what he said, no matter how he acted, if he was in this mental state you talk about, we can't take any of that into consideration, right? I think that you have to view it through the lens of his capacity. It's not that you can't take it into consideration. It's that you have to consider that as a mentally ill man, Mr. Hernandez didn't necessarily have the control over the words that he used. And I'll reiterate, an 18-year-old mentally ill man whose upbringing was horrendous and whose parents were practically absent. Those facts are relevant to a diminished capacity defense. The law simply in California was far different than it is today. And we do have to apply the laws that existed in California at the time of the crimes. Now, I want to just address also Mr. Lieberman's contention that if counsel had raised a diminished capacity defense based on mental illness, that evidence of sociopathy would have come in. What the post-conviction experts make clear is that based on Mr. Hernandez's genetic history, he more likely than not had bipolar mood disorder. And that rebuts the sociopathy because an expert would have had to rule out bipolar before reaching a conclusion of sociopathy. The other thing is that he was too young for a diagnosis of sociopathy. So it's not clear that that would have come in. And again, the state has provided you no evidence on this record with what we know now that that would have been the diagnosis. I want to just point you to a couple of the jury instructions. The jury was instructed that if there were two reasonable interpretations of the evidence, and one pointed to guilt and one pointed to diminished capacity, they had to adopt the interpretation which points to the absence of specific intent or mental state. Are you saying that was an incorrect statement? No, I'm saying that is a proper instruction. That's a correct instruction. And it told the jury, look, if you're debating this and you're finding two reasonable conclusions, you have to reach the conclusion that's pro-defendant. And I think that's true here. We are disagreeing about what this evidence means, but both conclusions are reasonable, and the jury was instructed in that case that it had to find the reasonable conclusion for the defendant. The jury was also instructed that it needed to look to view Mr. Hernandez's confession with caution. And so simply saying there's a detailed statement that rebuts everything isn't enough. It was the prosecution's burden to prove at all times that Mr. Hernandez had the requisite intent beyond a reasonable doubt. Mr. Hernandez had no such burden. He only had to produce a quantum of evidence to create that reasonable doubt, and he's done that here. Your Honors, if you would like me to address the deficient performance, I can. Why don't you address the legal standard? It's proper to credit the trial counsel's statements in this case, that he had no strategic reason for failing to investigate. And this Court has a raft of cases so finding, including Doe v. Ayers, Heisman v. Ayers, and then there's the United States Supreme Court cases, Williams v. Taylor, and Wiggins v. Smith. So it's not that we can't look to trial counsel's statements of what he was thinking. We have them. We can look at them. The district court found them credible. There is no basis in the record for finding them otherwise. I will also point you to the supplemental excerpts of record at 71 to 72, which contains a letter of trial counsel to an expert, in which trial counsel explains that it seems to him that Mr. Hernandez can keep his sanity in check, his insanity in check, as long as he's sober. But what he's dealing with here is the converse of diminished capacity, because in that condition one who is normally sane ingests alcohol and does something crazy with loss of inhibitions. That's a letter that trial counsel wrote pre-trial. So it's not simply that 18 years later trial counsel fell on his sword. There is documentary evidence to support what his thinking was. The other thing to look at is the fact that diminished capacity began as a defense about intoxication. It was later revised in the late 40s to encompass mental health evidence for the first time. With the passage of Prop 8, it is possible, and trial counsel does refer to this, he wasn't sure if the defense applied anymore. He may have reasonably thought that the only thing left of the defense was the original piece, which was the voluntary intoxication. So that's a reasonable conclusion to draw from the evidence. Your opposing counsel suggests that the only evidence that really came in about diminished capacity was indeed about alcoholism. Correct, Your Honor. Do you disagree with that? It is, Your Honor, the only evidence that came in. So if that's the case, then the only, if I recall correctly what he said, it was only one expert who so testified. Is that correct? That's correct. So basically we put aside the testimony for purposes of this issue, put aside the testimony of the other people, and we look at the testimony of the one witness who talked about the effect of alcoholism in this case. And that's what we're supposed to be looking at. Is that right? You would compare that testimony to what could have been offered now. I'll just add, what we're offering enhances the defense that was raised at trial. So you do have to look at it cumulatively when you consider prejudice. The evidence of the alcoholism and alcohol intake plus the mental health evidence that was developed post-conviction. Does the fact that, well, let me back up. When Mr. Arnon is allegedly said, I think they were playing pool or something like that, he made this comment about what he was going to do to Ms. Ryan. Was there testimony that he was drinking at that time? There was testimony that he was drinking some. The testimony was that he was not sufficiently drunk to be staggering or not speaking well. So he had had something to drink. Should that play into our analysis of the impact of the one expert's testimony about alcoholism? It certainly can, Your Honor. I would advise you that what that expert said ultimately was that an alcoholic like Mr. Hernandez could have had the specific intent to rape and murder. That was his ultimate testimony. So that doesn't help you. No, that does not help me. I'll also just say in reference to the other pretrial experts, what they were lacking was Mr. Hernandez's family history, his genetic history. And that's the history that really rebuts the showing of sociopathy and corroborates the diagnosis of bipolar disorder. Your Honor, in conclusion, it was always the prosecution's burden to prove beyond a reasonable doubt that Mr. Hernandez had the requisite intent. This is a 35-year-old case with a 35-year-old defense with limited precedential value going forward. I would urge you to find prejudice here in that Mr. Hernandez's best possible defense was never heard by a California jury. It should have the opportunity to decide for itself what degree of murder Mr. Hernandez is culpable of. Thank you, Your Honors. All right. Thank you, Counsel. Hernandez v. Chappell is resubmitted, and the session of the Court is adjourned for today. All rise.
judges: Wardlaw, M. Smith, Nguyen